UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DESHAUN WESTON, et al.,

                              Plaintiffs,

          -against-                                    **MEMORANDUM AND ORDER**
                                                       17 CV 0141 (CLP)
TECHSOL, LLC, f/k/a TECHNOLOGY
SOLUTIONS, INC.,

                              Defendant.
--------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On January 11, 2017, plaintiffs Deshaun Weston, Terrence Bachu, and Gregory

Campbell ("plaintiffs") commenced this action against defendant TechSol, LLC, f/k/a

Technology Solutions, Inc. ("TSI" or "defendant"), seeking unpaid overtime wages pursuant to

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law

("NYLL") § 650 et seq. The parties reached a collective settlement of this matter after a

mediation session with an experienced mediator, the terms of which are set forth in a Settlement

Agreement ("Settlement"), filed with the Court on March 5, 2018.[1]

On March 5, 2018, the plaintiffs filed their unopposed motion requesting that the Court

certify the Settlement Collective for settlement purposes only, and approve the Settlement

Agreement, the proposed Notice and Claim Form, and the costs and attorneys' fees of one-third

of the gross settlement amount. (See generally Mot.).[2] All parties have consented to this Court's

exercise of plenary jurisdiction pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules

---

[1] In line with the proposed Settlement Agreement, plaintiffs filed an Amended Complaint on March 5, 2018, withdrawing their New York state law claims. (See generally Amended Complaint, filed March 5, 2018, ECF No. 59).

[2] Citations to "Mot." refer to plaintiffs' Motion for Approval of Settlement Agreement, filed March 5, 2018, ECF No. 60.

of Civil Procedure.  (See 3/15/18 Consent).[3]

For the reasons set forth below, the Court finds the proposed settlement to be fair and reasonable and therefore grants the motion for settlement approval, the motion to certify the collective for the purposes of settlement, plaintiffs' motion for attorneys' fees, approves the proposed Notice and Claim Form, and authorizes distribution to the settlement collective.

## FACTUAL BACKGROUND

Defendant TSI is a telecommunications company with headquarters in Illinois.  (Compl.[4] ¶ 15).  Plaintiffs Weston, Bachu, and Campbell allege that they were employed by TSI as cable TV installers and repair technicians for various periods of time spanning from October 2012 to the filing of the Complaint.  (Id. ¶¶ 5, 9, 13).  Plaintiffs allege that during the time of their employment with TSI, they were classified as non-exempt "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e) and the N.Y.L.L. § 190(2).  (Id. ¶¶ 4, 8, 12; Pls.' Mem.[5] at 1). They allege that during the course of their employment, they were required to work in excess of 40 hours per week without receiving overtime pay for every hour worked over 40 in a week. (Compl. ¶ 24).  Plaintiffs allege that they did not receive overtime because defendant altered their timesheets to underreport their hours and because their "production bonus" was not factored into their hourly rate properly.  (Pls.' Mem. at 1).  Defendant disputes the allegations and contends that its policies regarding worktime and production bonuses were lawful.

---

[3] Citations to "3/15/18 Consent" refer to the Consent to Magistrate Judge signed by both parties, filed March 15, 2018, ECF No. 64.

[4] Citations to "Compl." refer to the Class and Collective Action Complaint, filed January 11, 2017, ECF No. 1.

[5] Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of the Settlement Agreement, filed March 5, 2018, ECF No. 61.

Following the filing of the Complaint in January 2017, the parties engaged in the exchange of discovery, and prepared their respective damages calculations. In March 2017, the parties participated in a private mediation session prior to which they each prepared detailed mediation statements. With the help of an experienced mediator, and considerable negotiations, the parties reached an agreement on September 19, 2017. The Settlement, which is on a collective basis, includes a non-reversionary gross cash payment of Five Hundred Fifty Thousand Dollars ($550,000) (the "Gross Settlement Amount"). The Settlement Agreement proposed an opt-in class of "all current or former Cable TV installation and Repair Technicians, who performed worked for TechSol in New York during the period from December 22, 2013 until February 4, 2017." (Sett. Agr.[6] ¶ 16). Upon approval of the Court, members of the collective class will receive notice of the proposed settlement and will be given sixty (60) days to return their Claim Forms. (Pls.' Mem. at 2).

Within ten (10) days after the Settlement is fully funded, or as soon as reasonably practicable, plaintiffs, opt-in plaintiffs, and anyone who submitted a Claim Form will receive a check that provides compensation for the weeks in which they performed work for the defendant. (Id.) Those members who submit Claim Forms will also release defendant from any claims arising out of or in connection with any matters that could have been or were alleged in the Complaint. (Id. at 2-3; Sett. Agr. ¶ 48).

Plaintiffs seek an Order from the Court: 1) certifying the Settlement Collective for purposes of the settlement only; 2) approving attorneys' fees in the amount of one-third of the

---

[6] Citations to "Sett. Agr." refer to the proposed Settlement Agreement attached as Exhibit 1 to Pls.' Mem., filed March 5, 2018, ECF No. 61.

Gross Settlement Amount, along with costs and expenses; 3) approving the proposed Notice and Claim Form and authorizing distribution to the Settlement Collective; and 4) granting approval of the Settlement Agreement and dismissing the case. (Mot. at 1). Defendant consents to the plaintiffs' requests.

DISCUSSION

I. Collective Action Certification Under FLSA § 216(b)

A. Legal Standard

Under the FLSA, employers are required to compensate covered employees for all work performed, including overtime, in order to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §§ 202(a), 207(a)(1); see also Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 522 (S.D.N.Y. 2015) (quoting Reich v. New York City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995)) (explaining that "[t]he purpose of the FLSA . . . was to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act'"). Pursuant to Section 216(b) of the FLSA, an employee may bring an action to "recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions." Cano v. Four M Food Corp., No. 08 CV 3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb. 3, 2009) (citation omitted).

Under the statute, an employee may bring a collective action "for and on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). However, unlike a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, a collective

4

action brought under the FLSA may be brought only on behalf of those employees who affirmatively "opt in" by giving consent in writing to become a party to the action. Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005); see also Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010) (noting "[u]nlike in traditional 'class actions' . . . plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by the judgment") (citations omitted).

Courts use a two-step analysis to determine whether certification of a collective action under the FLSA is appropriate. Valerio v. RNC Indus., 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (citing Myers v. Hertz Corp., 624 F.3d at 544-45). The first step requires the court to determine whether to send notice to individuals who are "similarly situated" to the named plaintiff "with respect to whether a FLSA violation has occurred," such that those individuals may opt in to the collective action. Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 346 (E.D.N.Y. 2015) (citing Myers v. Hertz Corp., 624 F.3d at 555). The court may consider "the pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members" in determining whether the potential opt-in plaintiffs are similarly situated to the named plaintiffs. Id. (quoting Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013)). At the collective certification stage, the court does not resolve factual disputes or make credibility determinations. Id. at 34 (citing cases). If plaintiffs meet this "fairly lenient" standard, the court will grant conditional certification and authorize notice to potential plaintiffs. Alvarez v. IBM Rests. Inc., 839 F. Supp. 2d 580, 584 (E.D.N.Y. 2012).

Although the statute has no specific provision for issuing such notice, the Supreme Court in Hoffman-LaRoche Inc. v. Sperling held that it was appropriate for courts to authorize such

5

notice under the FLSA in order to serve the "broad remedial goal" of the Act.  493 U.S. 165,
171-74 (1989); see also Sosa v. Caz-59 Express, Inc., No. 13 CV 4826, 2014 WL 5471256, at *2
(E.D.N.Y. May 28, 2014), report and recommendation adopted, 2014 WL 5471456 (E.D.N.Y.
Oct. 28, 2014) (quoting Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 335-36 (2d Cir.
1978)) (explaining that a district court "has the power to order that notice be given to other
potential members of the plaintiff class under the 'opt-in' provision of the [FLSA]").

The second step of the court's analysis takes place after discovery, when the court looks
at the record again and "makes a factual finding regarding the similarly situated requirement; if
the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the
class is decertified." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 100 (E.D.N.Y. 2014)
(quoting Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y.
2014)).


B.  Analysis

Plaintiffs contend that the allegations in the pleadings show that the named plaintiffs and
the putative collective plaintiffs are similarly situated in that they had substantially similar job
duties, similar schedules, and were subject to the same compensation policies and practices,
including the alleged time-shaving policy and method for calculating bonuses.  (Pls.' Mem. at 9).
Plaintiffs allege that the members of the putative collective were required to work more than 40
hours per week and did not receive appropriate overtime compensation for all hours worked.
(Id.)

For purposes of settlement only, defendant does not object to certification of a collective of similarly situated employees. Accordingly, the Court grants the application to certify a collective for settlement purposes of "all current or former Cable TV installation and Repair Technicians, who performed worked for TechSol in New York during the period from December 22, 2013 until February 4, 2017."

II. FLSA Class Settlement Approval

Before a settlement and stipulation of dismissal relating to a plaintiff's FLSA claims may take effect, the Second Circuit has explained that the parties must obtain approval from the district court or the Department of Labor. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016). That requirement "is consistent with what both the Supreme Court and [the Second Circuit] have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" Id. (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)).

In considering whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 U.S. Dist. LEXIS 46174, at *1-2 (E.D.N.Y. June 12, 2008); accord Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation"). Courts have identified

several factors to consider when determining whether a proposed settlement is fair and
reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which
> "the settlement will enable the parties to avoid anticipated burdens
> and expenses in establishing their respective claims and defenses";
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether "the settlement agreement is the product of arm's-length
> bargaining between experienced counsel"; and (5) the possibility of
> fraud or collusion.

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted).

In the context of FLSA settlements of collective actions, it is well established that the

same due process issues that arise in the context of a Rule 23 class action settlement are not

implicated in a settlement under the FLSA because plaintiffs in an FLSA action may decide not

to opt-in to the settlement, thereby retaining the right to sue the defendant for the same claims at

a later date.  See Azogue v. 16 for 8 Hospitality LLC, No. 13 CV 7899, 2016 WL 4411422, at *5

(S.D.N.Y. Aug. 19, 2016) (citing McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th

Cir. 1984).  "Accordingly, the standard for approval of an FLSA settlement is lower than for a

class action under Rule 23."  Guaman v. Ajna-Bar NYC, No. 12 CV 2987, 2013 WL 445896, at

* 6 (S.D.N.Y. Feb. 5, 2013).

FLSA settlements may be approved if they are reached as a "result of contested litigation

to resolve bona fide disputes." Toure v. AmeriGroup Corp., No. 10 CV 5391, 2012 WL

3240461, at *4 (E.D.N.Y. Aug. 6, 2012).  The adversarial nature of an FLSA dispute is generally

considered to be evidence of the fairness of the settlement.  Khait v. Whirlpool Corp., No. 06 CV

6381, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010).  Courts have found that as long as the

settlement "reflects a reasonable compromise over contested issues, the settlement should be

8

approved." Id.; Massiah v. Metroplus Health Plan, Inc., No. 11 CV 05669, 2012 WL 5874655, at * 5 (E.D.N.Y. Nov. 20, 2012); see also Flores v. Food Express Rego Park, Inc., No. 15 CV 1410, 2016 WL 386042, at * 1 (E.D.N.Y. Feb. 1, 2016) (holding that the standard for approval of an FLSA action is "fair and reasonable").

Plaintiffs explain that they performed "detailed, week-by-week calculations" for each of the Settlement Collective Members, using a three-year statute of limitations period under the FLSA and an overtime premium of one-half the employees' regular rate of pay. (Pls.' Mem. at 12). Thus, in calculating the total potential lost wages that could be recovered if successful at trial, plaintiffs conclude that the total potential unpaid wages, not including liquidated damages, would be approximately $600,000. (Id.; Lichten Decl.[7] ¶ 14). Thus, by agreeing to settle the case for a total amount of $550,000, plaintiffs contend that they would be receiving more than 90% of the total, unliquidated damages that could have been recovered at trial if successful on all claims. (Id.)

This amount also reflects that the merits of the claims would be hotly contested. Here, the named plaintiffs acknowledge that there are risks inherent in litigation generally and specifically in this case. (Pls.' Mem. at 11). While plaintiffs claim their hours were underreported and their timesheets altered, and that production bonuses were improperly calculated resulting in a failure to pay overtime, defendant disputes these claims and argues that the policies for recording worktime and calculating bonuses were lawful and that plaintiffs were paid all overtime hours owed. (Id.) Defendant also contends that collective treatment of these

---

[7] Citations to "Lichten Decl." refer to the Declaration of Harold L. Lichten, attached as Ex. 2 to Pls.' Mem., filed March 5, 2018, ECF No. 61.

claims is inappropriate and would contest any motion for collective action certification if litigation were to continue. (Id. at 12). Defendant also challenges the longer three-year statute of limitations and contends that because it acted in good faith, liquidated damages would not be appropriate. (Id. at 13). Defendant also contends that only two years is appropriate for the FLSA claims here, and finally, defendant takes the position that it would be financially unable to pay a larger judgment even if the case were to proceed to trial. (Id.)

Plaintiffs contend that the distribution method agreed upon is also fair and reasonable. (Id.; Lichten Decl. ¶ 21). First, any member of the Settlement Collective who does not return their Claim Form will not be waiving their claims against defendant; only those who submit their forms will release any such claims. (Sett. Agr. ¶ 42; Lichten Decl. ¶ 21). In distributing the settlement funds, plaintiffs have developed a formula whereby they deduct the attorneys' fees and costs, any accepted offers of judgment and service payments, with the remaining funds distributed to those members of the Settlement Collective who submit claims based on the number of weeks they were employed by TSI. (Sett. Agr. ¶¶ 23-24, 32). Individuals who were employed for a longer period of time will receive more under the Settlement Agreement, with payments ranging from a minimum payment of $16.26 for an individual who worked only one week during the period to approximately $2,649.93, with the average share approximating $924.82. (Pls.' Mem. at 14). Plaintiffs point out that given the likelihood that not all members will opt-in to the Settlement, and that the settlement is non-reversionary, the amounts actually received by those choosing to participate will likely be higher. (Id.)

Moreover, the releases to be executed are fair and reasonable and limited to the wage claims that the participating collective members have against defendant and claims for attorneys'

fees and costs. (Id.; Lichten Decl. ¶ 22). The release does not release non-wage related claims or prospective rights. (Id.) Also, there is no confidentiality provision in the Settlement Agreement that would burden the Collective Members. (Sett. Agr. ¶ 42; Lichten Decl. ¶ 20).

Plaintiffs also request service payments of $5,000 to each of the three named plaintiffs based on the efforts they have made in bringing this action, including providing pay records, timesheets, attending an in-person meeting with counsel, reviewing the complaint and defendant's documents, and helping prepare for mediation. (Pls.' Mem. at 15). Plaintiffs argue that the $5,000 amount is consistent with other awards found reasonable in similar cases. (Id. (citing Mills v. Capital One, N.A., No. 14 CV 1937, 2015 WL 5730008, *18 (S.D.N.Y. Sept. 30, 2015) (approving service award of $6,000 in FLSA settlement); Beckman v. Keybank, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (approving service awards of $7,500 and $5,000 for settlement of FLSA and NYLL claims); Morris v. Affinity Health Plan, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (approving a service award of $7,400 in a settlement for FLSA and NYLL claims)).

The "practice of awarding an extra amount to named plaintiffs . . . is . . . increasingly recognized as appropriate for named plaintiffs under the FLSA." Xiao Ling Chen v. XpressSpa at Terminal 4 JFK LLC, No. 15 CV 1347, 2018 WL 1633027, at *4 (E.D.N.Y. Mar. 30, 2018). Courts are skeptical, however, "when the average recovery to each member of the Collective appears small in comparison to the hefty payments to . . . the named plaintiffs." Id.; see also In re AOL Time Warner ERISA Litig., No. 02 CV 8853, 2007 WL 3145111, at *3 n. 10 (S.D.N.Y. Oct. 26, 2007). Courts thus examine settlement agreements in the FLSA context to determine if the proposed settlement "provides a meaningful benefit to the class when considered against the

obstacles to proving [plaintiffs'] claims with respect to damages in particular." Id. (citing Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *7 (E.D.N.Y. Dec. 11, 2017)).

Here, the Gross Settlement Amount is $550,000, equivalent to 90 percent of plaintiffs' unliquidated damages calculations. (Pls.' Mem. at 12). Additionally, the parties have maintained to the Court that defendant is unable to sustain any judgment larger than the Gross Settlement Amount if the matter were to proceed to trial. (Id. at 13). The Court also finds that the risks to named plaintiffs in FLSA collective actions are similar to those in the Rule 23 class action context: named plaintiffs, in challenging practices of their current employers, risk retaliation and loss of employment, and may also risk discrimination from future employers who learn of the litigation. See Diaz v. Scores Holding Co., Inc., No. 07 CV 8718, 2011 WL 6399468, at *3 (S.D.N.Y. 2011) (stating that "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff"); Velez v. Majik Cleaning Serv., No. 03 CV 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) (stating that "in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

The Court finds that given the participation of the named plaintiffs in this case, and the risks of future retaliation inherent in bringing an FLSA action as a named plaintiff, the service payments requested in this case are reasonable

III.  Attorneys' Fees and Costs

Plaintiffs also request attorneys' fees and costs in connection with this action, pursuant to 29 U.S.C. § 216(b) and NYLL § 198. (Pls.' Mem. at 16). "Both the FLSA and the NYLL are fee-shifting statutes, entitling [plaintiffs] to recover [their] reasonable attorneys' fees and costs. Gurung v. Malhotra, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012) (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a)).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. March 1, 2012) (citing Perdue v. Kenny A., – U.S. –, 130 S. Ct. 1662, 1672-73 (2010); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008)); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point").

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), report & recommendation adopted by 2013 WL 1622713 (April 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number

13

of hours reasonably expended by a reasonable hourly rate") (citing <u>Millea v. Metro-North R.R., Co.</u>, 658 F.3d at 166); <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, however, "it is not 'conclusive in all circumstances.'" <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 167 (quoting <u>Perdue v. Kenny A.</u>, 130 S. Ct. at 1673). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" <u>Id.</u> (quoting <u>Perdue v. Kenny A.</u>, 130 S. Ct. at 1673); <u>see also</u> <u>Adusumelli v. Steiner</u>, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." <u>Id.</u> As the court explained in <u>Dunn v. Advanced Credit Recovery, Inc.</u>, a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [<u>Johnson v. Georgia Highway Express, Inc.</u>] factors to reflect consideration of any special circumstances."[1] 2012 WL 676350, at *5, n.6.

The burden is on the party moving for attorneys' fees to justify the hourly rates sought. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437, 103 S. Ct. 1933, 1943 (1983). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with

---

[1]The <u>Johnson</u> factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).

the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160

(2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'")

(quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876

(1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee

applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the

requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895

n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee,

"courts 'should generally use the hourly rates employed in the district in which the reviewing

court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when

awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is

litigated, not where the attorneys are located) (citations omitted).

Plaintiffs' attorneys are seeking one-third of the total settlement amount in fees, which

they calculate as $183,333.33.[8]  (Pls.' Mem. at 17).  Not only do they argue that this is in line

with what courts have approved in other cases (see id. (citing Sewell v. Bovis Lend Lease, Inc.,

No. 09 CV 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012); Davis v. J.P. Morgan

Chase & Co., 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011)), but they contend that the amount

closely approximates their lodestar to date, which is $164,862.00 in fees, consisting of 404.7

hours of attorney and paralegal time across the three firms representing plaintiffs.[9]  (Id.)

---

[8] Plaintiffs' counsel notes that their contingency fee agreement with plaintiffs provides for recovery of actual costs as well as fees equal to one-third of the gross recovery.  (Pls.' Mem. at 17).

[9] Plaintiffs are represented by three law firms in this matter, Berger and Montague, P.C., Lichten & Liss-Riordan P.C., and Shulman Kessler LLP.  Counsel for each of the three law firms submitted affidavits attesting to the amount of

In this case, counsel for plaintiffs represents that she is a Shareholder of Berger & Montague, P.C. (the "Firm"), "one of the preeminent class action law firms in the United States," and that she personally has an "extensive background in litigation on behalf of employees." (Schalman-Bergen Decl.[10] ¶¶ 2, 3). Ms. Schalman-Bergen has attached a copy of the Firm's resume, which contains a list of the numerous class actions handled by the Firm, including in the area of employment law, and a listing of judicial praise for the work performed by the Firm in various cases. (Id., Ex. A). Based on the records provided to the Court, it appears that the majority of the work in this case was done by an associate, Alexandra K. Piazza, who expended 79.2 hours, charging at the rate of $430.00 per hour. (Id. ¶ 11). Two shareholders in the Firm – Ms. Schalman-Bergen and Managing Shareholder Shanon Carson – expended 36.2 and 23.1 hours respectively, with Carson billing at the rate of $795 per hour and Schalman-Bergen charging at the rate of $605 per hour. The paralegals who worked on the case were charged at rates ranging between $255 - $285 per hour. (Id.) Plaintiffs' counsel asserts that these are the rates normally charged in non-contingent matters and that numerous courts around the country have approved these rates in other FLSA collective action cases. (See id. ¶¶ 13, 14 (citing cases)).

In describing the work performed, Ms. Schalman-Bergen explains that she and Shanon Carson "oversaw, managed, assigned, and coordinated duties of a team of attorneys," "devised and implemented strategy," participated in numerous telephone conferences and meetings with defendant, "coordinated review of the documents," assisted in directing the settlement and

---

attorneys' fees and costs requested by each law firm. (Pls.' Mem. at 17-18).

[10] Citations to "Schalman-Bergen Decl." refer to the Declaration of Sarah R. Schalman-Bergen In Support of Plaintiffs' Unopposed Motion For Approval of the Settlement Agreement, dated February 27, 2018.

preparing for mediation. (Id. ¶¶ 16-17). The associate conducted the initial case review, research, reviewed documents, maintained client contact, assisted in preparing the Settlement Agreement and mediation papers. (Id. ¶ 18). According to Ms. Schalman-Bergen, the lodestar based on 183.2 hours expended as of the date of her Declaration amounted to $86,407, with an estimate of $100,000 as of the end of the settlement administration. (Id. 15).

Plaintiffs also seek an award of costs in the total amount of $12,338.03, which includes filing and service fees, costs for document production, travel, mediation fees and others. (Schalman-Bergen Decl. ¶ 24). Counsel avers that these expenses were necessary and reasonable in order to prosecute the case. (Id.)

In addition to the time expended by the Berger & Montague firm, Troy L. Kessler, a partner in the firm of Shulman Kessler LLP ("SK"), also seeks an award of fees from the Settlement for the work performed by him and an associate, Saranicole A. Duaban, who joined the firm in 2016. (Kessler Dec.[11] ¶¶ 13, 26). According to the Kessler Declaration, SK spent over 27.9 hours litigating and settling the case, with a total lodestar of $19,195.00. (Id. ¶¶ 23, 26, Ex. A). Mr. Kessler represents that SK bills its regular clients at rates ranging from $400 - $475 for partners, $350 - $375 for junior partners, $225- $325 for associates, and $75 to $100 for paralegals, and that such rates have been approved in wage and hour cases in the Eastern and Southern Districts of New York. (Id. ¶¶ 29, 30 (citing cases)). In addition, SK seeks an award of $400 in "court fees," without any further explanation as to what that refers to. (Id., Ex. B).

In addition, Harold L. Lichten, a partner in the firm of Lichten & Liss-Riordan, P.C. ("LLR"), also seeks an award of fees from the Settlement for the work performed by him, an

---

[11] Citations to "Kessler Decl." refer to the Declaration of Troy L. Kessler in Support of Plaintiffs' Motion Approval of the FLSA Settlement, dated January 19, 2018, ECF No. 61.

associate, and a paralegal. (Lichten Decl. ¶ 30). Mr. Lichten states that LLR spent 193.6 hours

litigating and settling the case, with a total lodestar of $69,260.00. (Id. ¶ 32). Mr. Lichten states

that LLR bills its clients at a rate of $600 for partners, $350 for associates and $150 for

paralegals. (Id.) LLR also seeks an award of $2,771.24 in expenses incurred litigating and

settling the matter. (Id. ¶ 33). Mr. Lichten represents that LLR will administer the settlement

directly and will incur an additional 50 hours of attorney and paralegal work and an additional

$2,000 in additional expenses. (Id. ¶ 34). Mr. Lichten represents that this amount is less than a

third-party class administrator would charge. (Id.)

 While these hourly rates are uniformly higher than the rates generally approved in this

Court for similar cases, the requested attorneys' fees approximate parties' lodestar to date, and,

more importantly, amount to one-third of the proposed Settlement Fund. Courts in this circuit

have often approved requests for attorneys' fees amounting up to 33.3% of a settlement fund.

See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y.

2008) (approving attorneys' fees of 33.3% of a $1.5 million settlement fund); In re Blech Secs.

Litig., No. 94 CV 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (awarding attorneys'

fees of 33.3% of settlement fund); see also Adair v. Bristol Tech. Sys., Inc., No. 97 CV 5874,

1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999); Klein v. PDG Remediation, Inc., No. 95 CV

4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999).

 In this case, plaintiffs' counsel seek one-third of the settlement fund, which closely

approximates their lodestar to date. (Pls.' Mem. at 17). "Courts regularly award multipliers

from two to six times the lodestar." Monserrate v. Tequipment, Inc., No. 11 CV 6090, 2012 WL

5830557, at *3 (E.D.N.Y. Nov. 16, 2012); see In re Lloyd's Am. Fund Litig., No. 96 CV 1262,

2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of

a settlement fund resulting in a positive lodestar multiplier of 2.09 and noting that this "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d at 340 (finding that "[f]or fees of $283,333 and a lodestar of $127,000, the resulting 'lodestar multiplier' of 2.2 is well within the range of acceptable"); Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country"). Thus, the Court finds the attorneys' fees requested by plaintiffs' counsel to be reasonable.

## IV. The Proposed Notice

Plaintiffs have submitted a Proposed Notice for putative class members and requests that the Court approve the Notice. (See Prop. Notice).[12] The Proposed Notice is directed at all current or former TechSol Technicians, and informs them of their right to share in the Settlement; it explains the allegations of FLSA wage and hour violations; informs them of the total Settlement Amount of $550,000, including the amount being paid for attorneys' fees and expenses, the cost of administration, and the service awards to the named plaintiffs. (Id. at 1-2). The Proposed Notice also informs them of the method by which each member's percentage of the Amount will be calculated and tells them that they have 180 days to cash their check in the event that they submit a claim form. It also informs the collective members that any uncashed checks will go as a *cy pres* award to the Legal Aid Society. (Id. at 2). The Proposed Notice instructs them as to how to file a Claim Form, provides the name and address of the Class Action

---

[12] Citations to "Prop. Notice" refer to the proposed Notice, attached as Exhibit B to the Settlement Agreement, ECF No. 61.

Administrator and the date by which the Claim Forms must be returned.  (Id. at 3).  It also informs the Collective Members that retaliation for participation is prohibited.  (Id.)

Under the terms of the Settlement Agreement, defendant is to provide plaintiffs' counsel with an electronic spreadsheet containing the names, last known addresses, last known telephone numbers, last known email addresses, if any, and social security or tax ID numbers for each Settlement Collective Member.  (Sett. Agr. ¶ 24).  This information is to be provided within fifteen (15) business days following the Court's approval of the Settlement.  (Id.)  Defendant will also supply plaintiffs' counsel with an electronic spreadsheet listing the total number of workweeks of each Settlement Collective Member during the period from December 23, 2013 and February 4, 2017.  (Id.)  Within seven (7) days of receiving that information, plaintiffs' counsel will mail, by U.S. First Class mail, and email to those members who have email addresses, the Court approved Notice and a Claim Form, along with a self-addressed postage pre-paid envelope.  (Id. ¶¶ 24, 37).  Plaintiffs' counsel will make reasonable efforts to ensure that the mailing addresses for prospective Collective Members are accurate and within 30 days of the initial mailing, will send a duplicate mailing to those who have not returned their Claim Forms.  (Id. ¶¶ 40, 41).  Settlement Collective Members will have 60 days to return the Claim Forms.  (Id. ¶ 40).

Defendant has not raised any objections to the Proposed Notice.  Bearing in mind that "the district court has discretion regarding the form and content of the notice," In Re Penthouse Exec. Club Comp. Litig., No. 10 CV 1145, 2010, WL 4340255, at *45 (S.D.N.Y. Oct. 27, 2010), the Court has reviewed the Proposed Notice and finds it to provide the fairest and most practicable procedure for notifying prospective Collective Members.

In this case, after holding a fairness hearing and reviewing the parties' submission, the Court finds that the settlement reached is a fair and reasonable compromise of the plaintiffs' claims, considering the amount received, the issues of potential liability that might have limited recovery, and the fact that the parties engaged in protracted arms' length negotiations between experienced counsel sufficient to gain an understanding of the risks and benefits of proceeding with the litigation. Moreover, having supervised the case and having become familiar with the issues raised, this Court is cognizant of the significant risks plaintiffs would face if they were to proceed to trial.

<u>CONCLUSION</u>

For the reasons set forth above, the Court finds the proposed settlement to be fair and reasonable. Plaintiffs' motion to certify the collective class for purposes of settlement and to preliminarily approve the settlement is therefore granted. The Court additionally grants plaintiffs' request for attorneys' fees and costs and approves of the proposed Notice and Claim Form and authorizes distribution to the settlement collective. The parties shall file a stipulation of dismissal for the Court's endorsement within forty-five (45) days.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 26, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

21